UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14108-CIV-MARRA

S.A.S.B. CORPORATION d/b/a
OKEECHOBEE DISCOUNT DRUG,
and ARCARE d/b/a BALD KNOB
MEDICAL CLINIC, individually and
as the representative of a class of
similarly situated persons,

Plaintiffs,

vs.

CONCORDIA PHARMACEUTICALS, INC.,
et al.,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Concordia Pharmaceuticals, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (DE 40) and Defendant Shionogi Inc.'s Joinder in Defendant Concordia Pharmaceuticals, Inc.'s Motion to Dismiss Plaintiffs' Motion to Dismiss (DE 43). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background

Plaintiffs S.A.S.B. Corporation d/b/a Okeechobee Discount Drug and ArCare d/b/a Bald Knob Medical Clinic (collectively, "Plaintiffs") have brought a two-count First Amended Class Action Complaint ("FAC") for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and for Conversion against Defendants Concordia Pharmaceuticals, Inc. ("Concordia"), Shionogi Pharma, Inc. ("Shionogi"), Lachlan Pharmaceuticals ("Lachlan"), Zylera

Pharmaceuticals, LLC ("Zylera"),[1] and John Does 1-12. (FAC, DE 33.) According to the FAC, Plaintiffs received unsolicited facsimile ("fax") advertisements for the prescription lice treatment, Ulesfia. (FAC ¶¶ 18-20, Exs. A and B.) Defendants sent, or caused these advertisements to be sent, to Plaintiffs. (FAC ¶ 21.)

A. Facts relating to personal jurisdiction

1. Facts alleged in the FAC

Concordia is a foreign corporation operating under the laws of Barbados. Concordia transacts business in the United States, including in Florida, and does so, among other ways, by profiting from the marketing and sale of Ulesfia. (FAC ¶ 11.) Shionogi is a Delaware corporation with its principal place of business in New Jersey. Shionogi transacts business in Florida, including profiting from the marketing and sale of Ulesfia. (FAC ¶ 12.) Shionogi is the registered trademark holder for Ulesfia lotion. (FAC ¶ 22.)

Shionogi is the owner of Ulesfia according to the United States Department of Health and Human Services and the Food and Drug Administration. Shionogi is not responsible for the marketing and promotional aspects of Ulesfia because it gave Concordia the license for marketing activities for Ulesfia. (FAC ¶¶ 26-27.) Ulesfia is listed on Concordia's website as one of their products. (FAC ¶ 28.) Concordia partnered with Defendants Lachlan and Zylera in co-promotion arrangements which allowed Concordia to access Zylera's seasoned sales force. (FAC ¶¶ 29-30.)

2. Evidence provided by Concordia

Concordia is a subsidiary of Concordia International Corp. ("CIC") Concordia is

---

[1] This Defendant and Plaintiffs have entered into a settlement. (DE 89.)

organized under the laws of Luxembourg and operates through a branch in Bardados. All employees of the branch office are located in Bardados and there is one employee in Luxembourg. (Arijit Mookerjee Decl. at ¶ 2, DE 41.)

Concordia does not maintain any corporate offices in Florida and has not paid taxes to Florida. (Id. at ¶ 12.) Concordia does not own, possess or hold any mortgage or any other type of lien on real property in Florida. (Id. at ¶ 13.) Concordia never contracted to insure a person, property or risk in Florida and does not have any bank accounts, employees, mail box addresses or telephone numbers in Florida. (Id. at ¶¶ 14-15.) Concordia never entered into a contract or agreement for the purpose of sending any faxed advertisements to residents of Florida. Nor has it entered into a contract agreeing to submit to the jurisdiction of Florida related to the distribution of Ulesfia. (Id. at ¶11.)

In 2013, Shionogi licensed Ulesfia to Concordia. (Id. at ¶ 4.) In January of 2014, Concordia entered into agreement with Lachlan, making Lachlan the exclusive distributor of Ulesfia in the United States. (Id. at ¶ 5.) Lachlan entered into an agreement with Zylera making Zylera the exclusive wholesale distributor of Ulesfia in the United States. (Id. at ¶ 6.) Because Lachlan is the exclusive distributor of Ulesfia in the United States, Concordia itself cannot distribute, market or commercialize Ulesfia in the United States. Concordia does not manufacture Ulesfia. (Id. at ¶ 9.) Concordia is not a party to the Lachlan/Zylera agreement. Zylera does not operate on behalf of or under the direction of Concordia. (Id. at ¶ 7; Jones Decl. ¶ 9.) Concordia does not know the amount of Ulesfia that Zylera and/or Lachlan sell in Florida. (Mookerjee at ¶ 9.)

Concordia did not send the faxes at issue in this case. (Id. at ¶ 8.) Nor did Concordia

request, initiate, or facilitate the sending of the faxes at issue. (Id. at ¶ 8; Jones at ¶ 9.) Concordia never reviewed the content of nor provided input on the sending of the faxes. (Mookerjee Decl. ¶ 8; Jones Decl. ¶ 11.)

Concordia has 13 drugs in its portfolio, not including the license to Ulesfia. Concordia makes these drugs available throughout the United States through a third-party fulfillment company that operates a warehouse located in Tennessee. Concordia does not manufacture these drugs. The fulfillment company ships drugs around the United States (including to Florida) to wholesale distributors at the request of those distributors. Concordia does not know whether the drugs shipped by the fulfillment company to wholesale distributors in Florida are ultimately sold in Florida or elsewhere. The revenues generated from the shipment of drugs by the fulfillment company to Florida range from 3% to 3.8% of Concordia's total revenue for 2014 through 2016. (Mookerjee Decl. ¶ 16.) Only two of these drugs are promoted throughout the United States, and the promotions are done through a third-party sales force, not Concordia. Concordia does not actively promote or advertise these drugs in Florida. (Id. at ¶ 17.)

### 3. Evidence provided by Shionogi

Shionogi is a pharmaceutical company incorporated under the laws of the state of Delaware, with its headquarters in the New Jersey. Shionogi also operates a facility with employees located in Georgia. (Emile Williams Decl. ¶ 3, DE 43-1.) Shionogi has 13 sales consultants in Florida. (Id. at ¶ 6.) Sales consultants do not market, promote or sell the Ulesfia product. (Id. at ¶ 12.) Shionogi sells its pharmaceutical products directly to a small number of distributors, who sell the products to pharmacy chains and smaller distributors. (Id. at ¶ 4.) Shionogi does not make any profits from the sale of Ulesfia. (Id. at ¶11.) In May of 2013,

Shionogi licensed Ulesfia to Concordia. (Id. at ¶ 9.) Shionogi is not a party to any subsequent distribution agreement that may have been entered into subsequently by Concordia relating to Ulesfia. (Id. at ¶ 13.) Zylera does not operate on behalf of or under the direction of Shionogi. (Id. at ¶ 15.) Shionogi did not send, authorize or review the faxes at issue. (Id. at ¶¶ 17-18.)

B.  Arguments of the parties

Defendants Concordia and Shionogi have moved to dismiss the FAC for lack of personal jurisdiction and for failure to state a claim. In moving to dismiss for lack of personal jurisdiction, both Defendants contend that there is no basis for specific or general jurisdiction and their contacts with the state of Florida are insufficient to satisfy due process. With respect to the motion to dismiss for failure to state a claim upon which relief can be granted, Defendants assert that the faxes at issue are not advertisements and they are not the sender of these faxes.

On August 26, 2016, the Court permitted Plaintiffs to conduct jurisdictional discovery to "explore fully the nature of Defendants' contacts in the state of Florida." (DE 56.) Once this discovery completed, Plaintiffs filed their response to the motions.

Plaintiffs claim personal jurisdiction over Defendants on several bases, including that Defendants committed a statutory tort in the state of Florida by sending targeted advertisements, and that Defendants had minimum contacts with the state of Florida and asserting jurisdiction over Defendants would comport with traditional notions of fair play and substantial justice. With respect to the motion to dismiss for failure to state a claim, Plaintiffs state that the faxes are advertisements under the TCPA, Defendants are liable as senders of the faxes and Defendants are liable for conversion.

II. Personal Jurisdiction

A. Legal Standard

The plaintiff's burden in alleging personal jurisdiction requires that the plaintiff establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. If by defendant's affidavits or other competent evidence, defendant sustains the burden of challenging plaintiff's allegations, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents. However, where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. See Future Tech. Today, Inc., v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Robinson v. Giarmarco & Bill, P.C., , 74 F.3d 253, 255 (11th Cir. 1996) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)); Exhibit Icons, LLC v. XP Cos., LLC, 609 F. Supp. 2d 1282, 1291-92 (S.D. Fla. 2009).

A defending party may move to dismiss a claim for relief under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To determine whether a nonresident defendant is subject to personal jurisdiction, two requirements must be met: 1) the Florida long-arm statute must be satisfied; and 2) the exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Posner, et al. v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir.1999); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). Thus, if Florida's long-arm statute is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy

the due process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000) (per curiam) (citing Sculptchair, 94 F.3d at 626); see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Florida's long-arm statute provides for both specific and general personal jurisdiction. Fla. Stat. § 48.193(1)-(2). Specific personal jurisdiction refers to the Court's jurisdiction over a nonresident defendant if the asserted cause of action "arises from" that defendant's actions within the forum. Fla. Stat. § 48.193(1); Melgarejo v. Pycsa Panama, S.A., 537 F. App'x 852, 854 (11th Cir. 2013). General personal jurisdiction refers to the Court's jurisdiction over nonresident defendants who are "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, [and] whether or not the claim arises from that activity." Fla. Stat. § 48.193(2); Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000).

Florida law determines the application of the long-arm statute. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11 th Cir. 2013) (citing United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir.2009)). The Court is required to apply the statute as the Supreme Court of Florida would and "adhere to the interpretations of [the statute] offered by Florida's District Courts of Appeal absent some indication that the Florida Supreme Court would hold otherwise." Louis Vuitton Malletier, S.A., 736 F.3d at 1352 (citing Sculptchair, 94 F.3d at 627).

B. Discussion

"The Eleventh Circuit has held that in deciding Rule 12(b) motions to dismiss, district courts should, as an initial matter, address any personal jurisdiction arguments raised by

7

defendants." Mother Doe I v. Al Maktoum, 632 F. Supp. 2d 1130, 1134 (S.D. Fla. 2007) (citing Madara v. Hall, 916 F.2d 1510, 1513–14 (11th Cir.1990)).

Florida's long-arm statute authorizes an exercise of personal jurisdiction where a claim arises from a defendant "[c]ommitting a tortious act within this state."[2] Fla. Stat. § 48.193(1)(a)(2). TCPA violations are tortious acts. Keim v. ADF MidAtlantic, LLC, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) (citing Bagg v. USHealth Grp., Inc., No. 615CV1666ORL37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016); US Fax Law Ctr., Inc. v. iHire, Inc., 362 F. Supp .2d 1248, 1252 (D. Colo. 2005)). And a tortfeasor's "physical presence in Florida is not required to obtain personal jurisdiction" under this provision. Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009); see also Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002). Instead, committing a tortious act within Florida "can occur by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications." Wendt, 822 So.2d at 1253; see also Acquadro v. Bergeron, 851 So.2d 665, 671 (Fla. 2003). Further, conversion is a tort that can establish personal jurisdiction over a defendant in Florida. Future Tech., 218 F.3d at 1250; Russo v. Fink, 87 So. 3d 815, 818 (Fla. Dist. Ct. App. 2012); Joseph v. Chanin, 869 So. 2d 738, 740 (Fla. Dist. Ct. App. 2004); Merkin v. PCA Health Plans of Florida, Inc., 855 So. 2d 137, 140 (Fla. Dist. Ct. App. 2003).

Here, assuming Plaintiffs could demonstrate that the tort occurred and that these

---

[2] Because personal jurisdiction may be established through the alleged tortious act, the Court need not analyze the other grounds asserted by Plaintiffs to establish personal jurisdiction, such as the general course of business in Florida or general jurisdiction. If the Court were to analyze these grounds, it would find they were not a basis for personal jurisdiction.

Defendants sent the faxes, long arm jurisdiction would be established. However, "[w]here the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 733 (11th Cir. 1982) (quoting Chatham Condo. Assocs. v. Century Village, Inc., 597 F.2d 1002, 1011 (5th Cir.1979)).[3] In reaching that conclusion, the Court in Eaton relied on binding Fifth Circuit precedent[4] that held that when substantive and jurisdictional issues are intertwined, a finding on jurisdiction should not be rendered until a decision on the merits could be resolved. See id. (citations omitted).

The Court next turns to the due process inquiry. The Eleventh Circuit has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. Louis Vuitton Malletier, 736 F.3d at 1355. Under this test, the Court must examine

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Id. The first inquiry focuses on whether there is a "direct causal relationship between the defendant, the forum, and the litigation." Id. at 1355–56 (citation omitted). The second inquiry assesses whether the defendant's contacts with the state "(1) are related to the plaintiff's cause of

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981) (en banc ), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

[4] Although Eaton and the binding Fifth Circuit cases it relies upon address subject matter jurisdiction, the Court concludes that the reasoning of these cases apply with equal force to personal jurisdiction.

action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357. The second inquiry may also be satisfied by an alternative "effects test." Id. at 1356. The third test considers "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" Id. at 1358 (quoting Licciardello v. Lovelady, 544 F.3d 1280, 1288 (11th Cir. 2008)).

As with the long-arm jurisdiction analysis, these require an examination into the merits. Because Plaintiffs' TCPA claim directly arises from the sending of the faxes, if Defendants are responsible for this tort, there would be a direct causal relationship among Defendants, the forum, and the litigation. The same is true under the "effects test" articulated in Calder v. Jones, 465 U.S. 783, 789 (1984). Under this test, "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state," so long as the tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Louis Vuitton, 736 F.3d at 1356 (brackets and citation omitted). Lastly, if Defendants are not responsible for sending these faxes, the state of Florida would not have an interest in adjudicating this dispute. See Licciardello, 544 F.3d at 1288.

For the foregoing reasons, the Court will exercise its discretion to reserve ruling on the jurisdictional issues until a decision on the merits can be rendered. See Exhibit Icons, LLC v. XP Cos. LLC, 609 F. Supp. 2d 1282, 1297 (S.D. Fla. 2009) (citing Nissim Corp. v. ClearPlay,

Inc., 351 F. Supp. 2d 1343, 1351–52 (S.D. Fla. 2004)).

### III. Failure to State a Claim

#### A. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

#### B. Discussion

In moving to dismiss the TCPA claim, Defendants contend that the faxes at issue are not

advertisements and therefore do not fall under the TCPA's junk-fax ban provision. The TCPA prohibits the use of a fax machine to send unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). An unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "Courts have interpreted the word 'commercial' to refer to the buying or selling of goods or services." Neurocare Institute of Central Florida, P.A. v. Healthtap, Inc., 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014) (citing Phillips Randolph Enters., LLC v. Adler–Weiner Research Chicago, Inc., 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007); Rudgayzer & Gratt v. Enine, Inc., 779 N.Y.S.2d 882, 885 (N.Y. Sup. App. 2004)). Examples of messages that do not fall under the purview of this Act include: 1) informational messages; (2) transactional messages; (3) non-commercial messages from non-profit organizations; and (4) non-advertisement messages with an incidental amount of advertising. In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 21 F.C.C.R. 3810-26 (Apr. 6, 2006);

According to Defendants, the faxes are not advertisements, but instead simply provide information about the use of the drug Ulesfia. In contrast, Plaintiffs claim these faxes are advertisements which encourage the prescribing of Ulesfia. In any event, to resolve this dispute, the Court would need to engage in an impermissible factual inquiry at the motion to dismiss stage.

Likewise, the Court cannot determine whether Defendants are the "senders" of the faxes at issue. The Eleventh Circuit has held that a "sender" of a fax advertisement under the TCPA is

"a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted." Palm Beach Golf Center-Boca, Inc. v. Sarris, 781 F.3d 1245, 1254 (11th Cir. 2015). Defendants contend that Ulesfia is not their "good or service" and the faxes at issue were not sent by them. Defendants, however, rely on evidence, which the Court cannot consider on a motion to dismiss for failure to state a claim. See St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (at the motion to dismiss stage, the Court cannot look beyond the four corners of the Complaint).

In sum, Defendants' arguments cannot be addressed without the benefit of a full record.[5] As such, Defendants may re-assert these arguments at the summary judgment stage.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Concordia's Motion to Dismiss Plaintiffs' First Amended Complaint (DE 40) is **DENIED.**

2) Defendant Shionogi's Inc.'s Joinder in Defendant Concordia's Motion to Dismiss Plaintiffs' Motion to Dismiss (DE 43) is **DENIED.**

3) Plaintiffs were ordered to serve Defendant Lachlan no later than December 13, 2016 or file a status report. To date, Plaintiff has not complied with this Order. If Plaintiff does not comply **within 14 days of the date of entry of this Order**, the Court will dismiss this Defendant without prejudice.

4) The parties shall file their Joint Scheduling Report **within 14 days of the date of**

---

[5] Given that Defendants make these same arguments regarding the conversion claim, the Court denies the motion to dismiss the conversion claim on the same basis.

13

**entry of this Order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of April, 2017.

                                                                          _____
                                                                          KENNETH A. MARRA
                                                                          United States District Judge